Maxon R. Davis
DAVIS, HATLEY, HAFFEMAN & TIGHE, P.C.
The Milwaukee Station, Third Floor
101 River Drive North
P.O. Box 2103
Great Falls, Montana 59403-2103
Telephone: (406) 761-5243
Facsimile:   (406) 761-4126
max.davis@dhhtlaw.com
*Attorneys for Defendants Medical Device Business*
*Services, Inc., DePuy Synthes Sales, Inc.,*
*Johnson & Johnson Services, Inc.,*
*and Johnson & Johnson*

## UNITED STATES DISTRICT COURT
## DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | |
|---|---|
| ROSALIE MURPHY | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | )<br>) Case No.: |
| KB ORTHOPEDICS, INC., KARL BUHR,<br>MEDICAL DEVICE BUSINESS SERVICES, INC.; DEPUY SYNTHES SALES, INC.; JOHNSON & JOHNSON SERVICES, INC.; JOHNSON & JOHNSON, and John Does 1-10 | )<br>)<br>) **NOTICE OF REMOVAL**<br>)<br>) **JURY TRIAL DEMANDED**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

Defendants DePuy Orthopaedics, Inc., now known as Medical Device Business Services, Inc. ("DePuy"); DePuy Synthes Sales, Inc.; Johnson & Johnson Services, Inc.; and Johnson & Johnson (collectively, "removing defendants"), by their undersigned attorneys, hereby give notice of the removal of this action, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, to the United States District Court for the District of Montana.

## NATURE OF THE ACTION

1.     On or about March 10, 2021, plaintiff Rosalie Murphy, a citizen of the State of Montana, filed a lawsuit in the Eighth Judicial District Court of Montana, Cascade County titled *Murphy v. KB Orthopedics, Inc.*, No. ADV-21-0157.  (*See* Compl. (attached as Ex. 1).)  In her Complaint, plaintiff asserted claims against KB Orthopedics, Inc. and its President, Karl Buhr.  On or about March 29, 2021, plaintiff filed an amended complaint, adding the removing defendants.  (*See* Am. Compl. (attached as Ex. 2).)

2.     Plaintiff alleges that she suffered injuries as a result of being implanted with a "DePuy Pinnacle MoM hip replacement system" ("Pinnacle Cup System") manufactured and sold by DePuy.  (*See, e.g.*, Am. Compl. ¶¶ 2, 13, 119.)

3.     This is one of nearly 7,000 similar cases pending around the country involving personal injury allegations by plaintiffs who were implanted with a

2

Pinnacle Cup System.  On May 23, 2011, the Judicial Panel on Multidistrict

Litigation issued an order establishing MDL No. 2244, *In re DePuy Orthopaedics,*

*Inc., Pinnacle Hip Implant Products Liability Litigation*, 787 F. Supp. 2d 1358

(J.P.M.L. 2011), before Judge James E. Kinkeade in the United States District

Court for the Northern District of Texas.  Removing defendants intend to seek the

transfer of this action to that proceeding, and will shortly provide the MDL Panel

notice of this action pursuant to the "tag-along" procedure contained in the MDL

Panel's Rules.

4.      The present case appears to reflect a new strategy by the law firm

representing Ms. Murphy of attempting to evade federal diversity jurisdiction (and

inclusion in the coordinated MDL proceeding) by initially naming one or two

peripheral in-state distributors of the Pinnacle Cup System as the sole defendants,

and then subsequently joining the DePuy and J&J entities, which are obviously the

real intended targets of the litigation.

5.      As set forth more fully below, this case is properly removed pursuant

to 28 U.S.C. § 1441, because the Court has subject-matter jurisdiction over it

pursuant to 28 U.S.C. § 1332 and removing defendants have satisfied the

procedural requirements for removal.

**I.      REMOVAL IS PROPER BECAUSE THIS COURT HAS SUBJECT-MATTER JURISDICTION PURSUANT TO 28 U.S.C. §§ 1332 AND 1441.**

6.      The Court has subject-matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1332 and 1441 because this is a civil action in which the amount in controversy exceeds the sum of $75,000, exclusive of costs and interest, and is between citizens of different states.

**A.      The Parties That Are Not Fraudulently Joined Are Diverse.**

7.      Plaintiff is a citizen of the State of Montana.  (Am. Compl. ¶ 116.)

8.      DePuy is, and was at the time plaintiff commenced this action, a corporation organized under the laws of the State of Indiana with its principal place of business in Warsaw, Indiana, and is therefore a citizen of the State of Indiana for purposes of determining diversity.  28 U.S.C. § 1332(c)(1).

9.      DePuy Synthes Sales, Inc. is, and was at the time plaintiff commenced this action, a corporation organized under the laws of the State of Delaware with its principal place of business in Raynham, Massachusetts, and is therefore a citizen of the States of Delaware and Massachusetts for purposes of determining diversity.  28 U.S.C. § 1332(c)(1).

10.      Johnson & Johnson Services, Inc. and Johnson & Johnson are, and were at the time plaintiff commenced this action, corporations organized under the

laws of the State of New Jersey with their principal places of business in New Brunswick, New Jersey, and are therefore citizens of the State of New Jersey for purposes of determining diversity.  28 U.S.C. § 1332(c)(1).

11.    KB Orthopedics and Buhr are both alleged to be citizens of the State of Montana.  (Am. Compl. ¶¶ 14, 20.)

12.    Karl Buhr, contrary to plaintiff's allegations in the Amended Complaint, is not a citizen of Montana.  While plaintiff alleges in conclusory fashion that Karl Buhr is a citizen of Montana (*see* Am. Compl. ¶ 20), Mr. Buhr's sworn declaration explains that he has been a citizen of Arizona since 2016 and, importantly, was a citizen of Arizona when plaintiff filed this lawsuit (*see* Decl. of Karl Buhr ("Buhr Decl.") ¶¶ 1, 3, 4, Apr. 30, 2021 (attached as Ex. 3)).  In short, the uncontroverted evidence shows that Buhr is diverse from plaintiff.

13.    Thus, plaintiff is diverse from all defendants except KB Orthopedics.[1]

14.    Although KB Orthopedics is alleged to be a citizen of Montana, its presence in this action does not defeat diversity jurisdiction because it is fraudulently joined.

---

[1]    The Amended Complaint alleges that KB Orthopedics "is an active Idaho corporation organized under the laws of Montana."  (Am. Compl. ¶ 16.)  While KB Orthopedics was actually dissolved in 2018 (*see id.* ¶ 15), that does not bear on its citizenship for purposes of federal diversity jurisdiction.

15.     Accordingly, there is complete diversity of citizenship between plaintiff and the properly joined and served defendants, and thus, removal is proper.  28 U.S.C. §§ 1332(a), 1441(a).

**B.      Plaintiff Has Fraudulently Joined KB Orthopedics, And Its Citizenship Should Therefore Be Disregarded.**

16.     KB Orthopedics is fraudulently joined and its citizenship should be disregarded for purposes of determining whether removal is proper. "[F]raudulently joined defendants will not defeat removal on diversity grounds." *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998).  "Joinder of a non-diverse defendant is deemed fraudulent, and the defendant's presence in the lawsuit is ignored for purposes of determining diversity, '[i]f the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state.'"  *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001) (citation omitted); *see also Burnett v. PacificSource Health Plans*, No. CV 19-45-H-SEH, 2019 WL 4016604, at *1-3 (D. Mont. Aug. 26, 2019) (finding removal proper where "[f]acts sufficient to state an independent claim for relief against [the non-diverse defendant] [we]re not well-pleaded [sic]"); *Giard v. Ouellette*, No. CV-12-113-BLG-RFC-CSO, 2012 WL 5386958, at *5 (D. Mont. Nov. 1, 2012) ("The Court concludes that the complaint fails to state a claim against Ouellette.  The Court further concludes that this failure

6

is obvious under Montana law."), *report and recommendation adopted*, No. CV-12-113-BLG-RFC, 2013 WL 796366 (D. Mont. Mar. 4, 2013).  As discussed below, it is "obvious" that plaintiff's claims against KB Orthopedics have no possibility of success for multiple reasons.

> **1.   There Is No Possibility That Plaintiff Will Prevail On Her Claims Against KB Orthopedics Because Such Claims Are Preempted.**

17.   Plaintiff's claims against KB Orthopedics are doomed to fail because such claims against **non-manufacturers** of an FDA-cleared product are preempted. *See PLIVA, Inc. v. Mensing*, 564 U.S. 604, 624-25 (2011); *Mut. Pharm. Co. v. Bartlett*, 570 U.S. 472 (2013).  Plaintiff does not allege any facts capable of establishing that KB Orthopedics, which provided DePuy's products to physicians and hospitals, played any role in the manufacture or design of the Pinnacle Cup System, and the evidence in the record establishes that it did not.  (*See* Buhr Decl. ¶ 16.)

18.   In *Mensing*, the U.S. Supreme Court ruled that all claims against generic drug manufacturers that were premised on a failure to warn are preempted by federal law based on the principle of impossibility preemption.  564 U.S. at 624-25.  According to the Supreme Court, generic manufacturers cannot be found liable on a theory of failure to warn because generic manufacturers have no power

to unilaterally effectuate a label change; rather, they must use the same labels and warnings as those approved by the FDA with respect to the brand-name version of the drug. *Id.* at 613-15. Thus, as long as the labels and warnings for the generic form of the drug match the labels and warnings that the FDA has approved for the brand-name form of the drug, generic manufacturers cannot as a matter of law be held liable under state tort law for failing to warn.

19. Although *Mensing* involved failure-to-warn claims, the Supreme Court has reached a similar conclusion as to product-design claims as well. In *Bartlett*, the Supreme Court held that a generic manufacturer could not "legally make [the relevant product] in another composition" under the Federal Food, Drug and Cosmetic Act ("FDCA"). *Bartlett*, 570 U.S. at 483-84 (citation omitted). As the Court explained, "the FDCA requires a generic drug to have the same active ingredients, route of administration, dosage form, strength, and labeling as the brand-name drug on which it is based." *Id.* (citing 21 U.S.C. §§ 355(j)(2)(A)(ii)-(v) and (8)(B); 21 C.F.R. § 320.1(c)). Because it was "not possible" for the generic manufacturer defendant in *Bartlett* to "redesign" the product at issue to make it more useful or less risky, the Court concluded that causes of action based on a defective design theory are likewise preempted. *See id.*; *see also Demahy v. Schwarz Pharma, Inc.*, 702 F.3d 177, 187 (5th Cir. 2012) (per curiam) ("[W]e are

8

persuaded that [plaintiff's] design defect claim [against generic manufacturer] would be preempted [under *Mensing*].")."; *Gardley-Starks v. Pfizer, Inc.*, 917 F. Supp. 2d 597, 611 (N.D. Miss. 2013) (design-defect claims "are also preempted"); *In re Pamidronate Prods. Liab. Litig.*, 842 F. Supp. 2d 479, 484 (E.D.N.Y. 2012) ("[T]he 'federal duty of "sameness"' also applies in the context of generic drug design . . . .") (citation omitted).

20.     As other courts have found, these principles apply in spades to non-manufacturing defendants such as KB Orthopedics.  After all, KB Orthopedics had "no authority" to effectuate changes to the product or its labeling either.  *See, e.g.*, *In re Fosamax (Alendronate Sodium) Prods. Liab. Litig. (No. II)*, MDL No. 2243 (JAP-LHG), No. 3:08-cv-00008-JAP-LHG, 2012 U.S. Dist. LEXIS 5817, at *26-28 (D.N.J. Jan. 17, 2012) (because a distributor "ha[d] no authority to initiate a labeling change" and "no power to unilaterally change Fosamax labeling," it "could not 'independently do under federal law what state law requires of it'") (citation omitted); *see also Stevens v. Cmty. Health Care, Inc.*, No. ESCV200702080, 2011 WL 6379298, at *1 (Mass. Super. Ct. Oct. 5, 2011) ("As a distributor, however, [the defendant] had no ability to change labeling or warnings and thus, like a generic manufacturer, [it] cannot be subject to liability in connection with a state law claim premised on a 'failure to warn.'").

21.    In *In re Fosamax*, for example, the court granted a distributor's motion for judgment on the pleadings after finding that the plaintiffs' state-law claims were preempted.  2012 U.S. Dist. LEXIS 5817, at *26-28.  The plaintiffs in *Fosamax* asserted a number of claims against "the authorized distributor of branded Fosamax" that "emanated from a general theory of failure to warn," including "defective design, negligence, fraud, misrepresentation, breach of express and implied warranties, violation of consumer protection statutes, restitution, and loss of consortium."  *Id.* at *20-21 (citation omitted).  In rejecting the plaintiffs' claims, the district court ruled that "[a]s a distributor of Fosamax, [the distributor] ha[d] no power to change Fosamax labeling."  *Id.* at *27.  According to the court, "[t]hat power lies with the applicant who . . . seek[s] approval to market Fosamax" – in that case, Merck.  *Id.*  Additionally, the court noted that if the FDA had become aware of new safety information in connection with Fosamax use that it believed should be included in the labeling, the FDA would have notified Merck – not the distributor.  *Id.*  Because the distributor "ha[d] no authority to initiate a labeling change" and "no power to unilaterally change Fosamax labeling," it "could not 'independently do under federal law what state law requires of it.'"  *Id.* at *27-28 (quoting *Mensing*, 564 U.S. at 620-21).

Accordingly, the court found that "the state law claims brought against [the distributor] [were] preempted." *Id.* at *28.

22.    Here, plaintiff's claims against KB Orthopedics all rest on either a failure-to-warn theory or a defective design theory.  (*See* Am. Compl. ¶ 9 (alleging all "[d]efendants played an integral role in the omissions and misinformation that resulted in the orthopedic community and Plaintiff's surgeon, in particular, using the Pinnacle"); *id.* ¶ 11 ("Defendants are and were aware the metal released from Pinnacle Devices result[s] in unreasonably high rates of negative clinical outcomes . . . ."); *id.* ¶ 22 (alleging KB Orthopedics was "responsible for informing & educating medical providers, marketing, selling, facilitating distribution of product to, servicing and supporting Plaintiff's orthopedic surgeons and the Pinnacle hip replacement at issue in this matter"); *id.* ¶ 137 ("The Pinnacle was defective and unreasonably dangerous in that the labeling was insufficient to warn users of the hazardous conditions posed by said items . . . ."); *id.* ¶ 139 ("The Pinnacle was defective due to a latent manufacturing defect which resulted in toxic release of heavy metal ions causing the injuries described herein.").)  However, KB Orthopedics had "no authority" to effectuate changes to the products or their labeling, *In re Fosamax*, 2012 U.S. Dist. LEXIS 5817, at *26-

28; nor could it possibly "redesign" the products to make them more proper, appropriate or correct, *see Bartlett*, 570 U.S. at 483-84.

23.    In sum, all of plaintiff's claims against KB Orthopedics have no reasonable possibility of success because they are preempted, rendering that defendant fraudulently joined.

> ## 2.    Plaintiff's Claims Have No Possibility Of Success Under Montana Law For Other Reasons As Well.

24.    Even if plaintiff's claims against KB Orthopedics were not preempted, her causes of action against it would still be destined to fail for a variety of other reasons as well.

25.    ***First***, plaintiff cannot state a colorable cause of action for strict liability against KB Orthopedics because that defendant is not a "seller" under the applicable statute.  *See* Mont. Code Ann. § 27-1-719.  In Montana, "[a] person who sells a product in a defective condition that is unreasonably dangerous to a user or consumer . . . is liable for physical harm caused by the product" if "the seller is engaged in the business of selling the product" – i.e., is a "manufacturer, wholesaler, or retailer."  *Id*.; *see also Papp v. Rocky Mountain Oil & Minerals, Inc*., 769 P.2d 1249, 1255 (Mont. 1989) (explaining that strict products liability under Montana law is limited to "'one who sells a product in a defective condition,' where the seller is engaged in the business of selling the product")

12

(citation omitted); *Mitchell v. Shell Oil Co.*, 579 F. Supp. 1326, 1331 (D. Mont. 1984) (plaintiff failed to assert valid strict liability claims where non-manufacturing defendant "was not in the business of selling th[e] product to the general public").

26.     Here, contrary to plaintiff's assertions in the Amended Complaint, KB Orthopedics did not sell the Pinnacle Cup System.  (*See* Buhr Decl. ¶ 9 (although "KB Orthopedics distributed medical products for DePuy, KB Orthopedics did not purchase the products from DePuy; nor did it take title to or obtain an ownership interest in the products.  Rather, ***DePuy negotiated pricing and sold its products directly to hospitals.***") (emphasis added); *id.* ¶ 16 ("KB Orthopedics played no role in the research, design, manufacture, development, or testing of the Pinnacle hip prosthesis."); *id.* ¶ 18 (KB Orthopedics did not "draft[], compile[], or generate[] the packaging, labeling and/or language (including any instructions or warnings) used in the package inserts for the Pinnacle hip prosthesis.").)  Regardless of legal theory – design defect or failure to warn – plaintiff's strict liability claim against KB Orthopedics has no prospect of success because it was not a seller of the Pinnacle Cup System.

27.     ***Second***, plaintiff's negligence cause of action against KB Orthopedics also has no possibility of success because she cannot establish that KB Orthopedics

owed her an independent duty.  Under Montana law, a plaintiff must first establish

that a defendant owed her a duty of care before she can recover for negligence.

*See Fabich v. PPL Mont., LLC*, 170 P.3d 943, 947, 950 (Mont. 2007) (a negligence

claim fails unless plaintiff can offer proof "of the breach of a duty which causes

damages").

28.     Courts throughout the country have recognized that entities like KB

Orthopedics do not have a duty, under negligence law, to test or inspect a product.

*See, e.g.*, *Satchi v. Rheon U.S.A., Inc.*, 255 F. Supp. 3d 253, 262-63 (D. Mass.

2017) (distributor could not be held liable for negligence for failure to perform a

safety check on product because it "had no obligation to perform a safety check of

the [product] and never assumed an affirmative duty to perform such a check"),

*appeal filed*; *McLaurin v. E. Jordan Iron Works, Inc.*, 666 F. Supp. 2d 590, 601-02

(E.D.N.C. 2009) (noting the "general rule" that a "non-manufacturing seller who is

acting as a 'mere conduit' of the product has no affirmative duty to inspect and test

a product made by a reputable manufacturer"); *Vandelune v. 4B Elevator*

*Components Unlimited*, 148 F.3d 943, 947 (8th Cir. 1998) (independent distributor

could not be held liable for negligent failure to inspect or test); *Curry v. Sile*

*Distribs.*, 727 F. Supp. 1052, 1054 (N.D. Miss. 1990) ("A distributor owes no duty

to inspect a product for latent defects . . . ."); *Richardson v. Michelin N. Am., Inc.*,

14

No. 95-CV-0760E(H), 1998 WL 135804, at *5 (W.D.N.Y. Mar. 18, 1998) (retailer "did not have a duty to inspect or test the [product]"); *see also, e.g.*, *Walker v. Medtronic, Inc.*, No. 1:03CV74-D-D, 2003 U.S. Dist. LEXIS 26549, at *9 (N.D. Miss. June 4, 2003) (denying remand in case involving allegedly defective medical device because plaintiff's failure-to-warn claims against non-diverse sales representative were barred; "any duty to warn a physician about the dangers of a medical device is placed upon the device's manufacturer" and therefore "the sales representative selling the device is under no duty to warn patients . . . concerning the device"); *Lizana v. Guidant Corp.*, No. 1:03cv254GRo, 2004 U.S. Dist. LEXIS 27623, at *6-9 (S.D. Miss. Jan. 20, 2004) (denying remand in case involving allegedly defective pacemaker because plaintiff's claim against non-diverse sales representative failed; "a medical device's manufacturer possesses a duty to warn a physician about possible dangers regarding the device, with sales representatives of the manufacturer under no obligation to warn patients about the device"); *DaCosta v. Novartis AG*, 180 F. Supp. 2d 1178, 1183 (D. Or. 2001) (denying remand because pharmaceutical sales representative owed no duty to the plaintiff).

29.     Moreover, it is well settled that a distributor or sales organization with no special knowledge regarding a product cannot be held liable under a theory of negligence.  *See* Restatement (Second) of Torts § 402 (1965) (indicating that a

15

seller of a product manufactured by a third person "who neither knows nor has

reason to know that it is, or is likely to be, dangerous, is not liable in an action for

negligence for harm caused by the dangerous character or condition of the

[product] because of his failure to discover the danger by an inspection or test of

the [product] before selling it"); *see also Shuras v. Integrated Project Servs., Inc.*,

190 F. Supp. 2d 194, 199-200 (D. Mass. 2002) (granting summary judgment on

negligence claim against distributor because the plaintiff "offer[ed] no evidence to

suggest that Kuhlman ***knew or had reason to know*** of any defects in the

[product]") (citing Restatement (Second) of Torts § 402).

30.     While the Amended Complaint does attempt to plead knowledge of

alleged product defects on the part of KB Orthopedics, it does so in a conclusory

manner, simply alleging that KB Orthopedics "knew or should have known" about

the purported defects in the Pinnacle Cup System.  (*See* Am. Compl. ¶ 18.)  "Other

courts reviewing product liability claims for fraudulent joinder have held that bald

or conclusory allegations that a defendant 'knew' of a product defect or 'failed to

use reasonable care' in the distribution or sale of a product do not establish

colorable claims of negligence."  *Moore v. Johnson & Johnson*, 907 F. Supp. 2d

646, 668 (E.D. Pa. 2012) (denying remand and finding a retailer fraudulently

joined on all claims).

16

31.     None of plaintiff's other allegations comes close to pleading a colorable basis for imputing any knowledge of a purported defect to KB Orthopedics either.  For example, plaintiff alleges that KB Orthopedics gained "independent" "knowledge" of the Pinnacle Cup System through the orthopedic community by attending "conferences," "workshops," and revision surgeries involving the product.  (*See* Am. Compl. ¶ 26 ("Distributor Defendants would attend conferences and workshops held by a variety of professionals and gain knowledge from sources independent of Johnson & Johnson."); *id.* ¶ 28 ("Distributor Defendants and/or their sales representatives attended numerous surgeries in which an ASR or Pinnacle device was revised due to a metal reaction.").)  But these boilerplate allegations do not allege ***what*** purported knowledge KB Orthopedics supposedly gained and how such as-yet-unidentified knowledge put it on notice that the Pinnacle Cup System was allegedly defective. In short, these allegations are no less conclusory than plaintiff's allegation that KB Orthopedics "knew or should have known" of a purported defect.

32.     Moreover, the declaration submitted by Mr. Buhr belies any conclusory claim that KB Orthopedics knew or reasonably should have known of any purported defect in the Pinnacle Cup System.  (*See, e.g.*, Buhr Decl. ¶¶ 12, 21.) This evidence confirms that plaintiff's negligence claim against KB Orthopedics

17

has no reasonable possibility of success. *See Slay v. DePuy Orthopaedics, Inc.*, No. 1:11 dp 20524, 2011 WL 3052531, at \*3-5 (N.D. Ohio July 25, 2011) (denying remand where non-diverse sales representative defendant stated in a sworn declaration that he "ha[d] 'no personal knowledge' of the warnings, marketing, advertising, manufacturing, design, or other defect related to the hip implants," and noting that "where the non-moving party has presented unrebutted evidence in the form of an affidavit or declaration, the [c]ourt will give weight to the sworn testimony rather than the unsupported allegations of the complaint"); *Tucker v. Howmedica Osteonics Corp.*, No. 1:14-CV-1176-ODE, 2014 WL 12061532, at \*5 (N.D. Ga. Oct. 2, 2014) (denying remand and finding "[p]laintiff's merely conclusory allegations" that defendants knew or should have known of alleged product defects "cannot survive Crosslink's submission of testimonial evidence to the contrary").

33.   ***Third***, plaintiff's claims against KB Orthopedics for breach of express and implied warranty also have no possibility of success because KB Orthopedics was not a "seller" of the Pinnacle Cup System.  In Montana, express and implied warranties are only created by "sellers."  *See* Mont. Code Ann. § 30-2-313 ("Any affirmation of fact or promise made by the ***seller*** to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that

18

the goods shall conform to the affirmation or promise.") (emphasis added); Mont.
Code Ann. § 30-2-314 ("[A] warranty that the goods shall be merchantable is
implied in a contract for their sale if the **seller** is a merchant with respect to goods
of that kind.") (emphasis added).  Under this statutory scheme, a "seller" is a
"person who sells or contracts to sell goods."  Mont. Code Ann. § 30-2-103.

34.    As previously discussed, KB Orthopedics did not sell the hospital,
plaintiff's surgeon, or plaintiff the Pinnacle Cup System – or contract to sell the
product.[2]  (*See* Buhr Decl. ¶ 9.)  Rather, that product was sold "directly" by DePuy.
(*Id.*)  Accordingly, there is no reasonable possibility that plaintiff could prevail
against KB Orthopedics on her claims for breach of warranty.

35.    **Finally**, plaintiff's causes of action against KB Orthopedics for fraud
and violation of the Montana Consumer Protection Act ("MCPA") are also
doomed to fail because the Amended Complaint does not identify a single alleged

---

[2]    Plaintiff's express warranty claim independently has no reasonable
possibility of success because she does not adequately allege any reliance on a
supposed express warranty.  *See Woodahl v. Matthews*, 639 P.2d 1165, 1168
(Mont. 1982) ("There can be no express warranty without reliance.").  Although
plaintiff alleges a series of express warranties (*see* Am. Compl. ¶ 146), plaintiff
does not specify which – if any – of these warranties was communicated by KB
Orthopedics to plaintiff or her surgeon and which specific warranties – if any –
plaintiff or her surgeon relied on.  For this reason too, plaintiff's claim for breach
of express warranty has no reasonable prospect of success.

misrepresentation from KB Orthopedics – much less one that Ms. Murphy or her surgeon relied upon prior to plaintiff's implantation with the Pinnacle Cup System. Under Montana law, "[i]n order to prove fraud [a plaintiff] must prove," *inter alia*, "a representation; . . . its falsity . . . [plaintiff's] reliance on the representation . . . [and] [plaintiff's] consequent and proximate injury caused by the reliance." *Batten v. Watts Cycle & Marine, Inc.*, 783 P.2d 378, 380-81 (Mont. 1989); *see Fossen v. Fossen*, 311 P.3d 743, 746-47 (Mont. 2013) (affirming trial court's dismissal of fraud claim where the plaintiff did not specify the representation made to the plaintiff because "[w]ithout particular facts and circumstances describing the representation, [defendant] cannot effectively answer the complaint's allegations about the representation").  Similarly, a fraud-based claim under the MCPA requires that the allegedly fraudulent act caused the plaintiff's injury.  *See* Mont. Code Ann. § 30-14-103; Mont. Code Ann. § 30-14-133 ("A consumer who suffers any ascertainable loss . . . may bring an individual" action); *see also Anderson v. ReconTrust Co., N.A.*, 407 P.3d 692, 700 (Mont. 2017) ("A private MCPA claim also requires proof that the alleged unfair or deceptive trade act or practice ***caused*** the complaining consumer to suffer an 'ascertainable' financial or property 'loss.'") (emphasis added).

20

36.     Importantly, plaintiff must allege these elements with the particularity required by Federal Rule of Civil Procedure 9(b).  *See, e.g.*, *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003) ("It is well-established in the Ninth Circuit that both claims for fraud and negligent misrepresentation must meet Rule 9(b)'s particularity requirements.").  Bald allegations of fraud cannot defeat diversity jurisdiction.  *See, e.g.*, *In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 283 (S.D.N.Y. 2001) (defendant fraudulently joined because, *inter alia*, plaintiffs did not meet Rule 9(b)'s requirements where they failed to allege "the time and place of particular representations"); *see also Drange v. Mountain W. Farm Bureau Mut. Ins. Co.*, No. 20-30-BLG-SPW, 2020 WL 4430507, at *1 (D. Mont. July 30, 2020) ("Claims sounding in fraud or mistake are subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b) . . . .")

37.     Here, the Amended Complaint has not identified any statements that KB Orthopedics allegedly made to plaintiff (or her surgeon) regarding the safety or efficacy of the Pinnacle Cup System.  Nor has plaintiff alleged that she (or her surgeon) relied on any such statements in selecting the Pinnacle Cup System – let alone with the particularity required by Rule 9(b).  Instead, plaintiff merely offers vague, unsupported allegations that the "distributor defendants" – at some

unspecified time and place – misrepresented the safety and efficacy of the Pinnacle Cup System.  (*See, e.g.*, Am. Compl. ¶ 61 ("Defendants[] . . . misrepresent the Pinnacle as a high-quality, safe and effective hip replacement product."); *id.* ¶ 78 ("Distributor Defendants provided false information regarding the purported benefits of the Pinnacle as well as omitting critical information regarding its risks in an effort to profit from the sale of the implant.").)  *See Fossen*, 311 P.3d at 745-46 ("A sufficiently pled fraud complaint should allege not only that a representation was made, but also the time and place of the representation.").

38.     Although the Amended Complaint also highlights two advertisements about the Pinnacle Cup System (*see* Am. Compl. ¶¶ 52-54), not even plaintiff alleges that KB Orthopedics created or disseminated these advertisements.  Nor could she, given the images highlighted in the Amended Complaint, which bear the "DePuy" name (*see id.*), and in light of Mr. Buhr's declaration, which makes clear that "[a]ll marketing and promotional materials utilized by KB Orthopedics or its representatives relating to the Pinnacle hip prosthesis were generated by or for DePuy" (Buhr Decl. ¶ 19).  In any event, the Amended Complaint does not allege that either Ms. Murphy or her surgeon saw or relied on these particular materials.  Accordingly, the inclusion of ***DePuy*** marketing brochures in the Amended

Complaint has no bearing on the viability of plaintiff's fraud-based claims against

***KB Orthopedics***.

39.    For these reasons, plaintiff's fraud-based claims against KB

Orthopedics have no reasonable possibility of success.

### C.    <u>The Amount In Controversy Exceeds $75,000.</u>

40.    The amount-in-controversy requirement for diversity jurisdiction is

satisfied in this case because it is clear from the face of plaintiff's Amended

Complaint that the "matter in controversy exceeds the sum or value of $75,000,

exclusive of interest and costs."  28 U.S.C. § 1332(a).

41.    Plaintiff in this action claims that she "suffered substantial injuries

and damages in excess of $75,000.00."  (*See, e.g.*, Am. Compl. ¶ 13.)

42.    It is widely recognized that personal injury claims facially meet the

$75,000 jurisdictional threshold.  *See, e.g.*, *In re Rezulin*, 133 F. Supp. 2d at 296

(finding that a complaint alleging various injuries from taking a prescription drug

"obviously asserts a claim exceeding $75,000"); *Smith v. Wyeth Inc.*, 488 F. Supp.

2d 625, 630-31 (W.D. Ky. 2007) (denying motion to remand); *Copley v. Wyeth,*

*Inc.*, No. 09-722, 2009 WL 1089663 (E.D. Pa. Apr. 22, 2009) (same).

43.     Given plaintiff's claim that she has suffered "substantial" personal injuries, and her request for punitive damages (*see* Am. Compl. ¶¶ 13, 127), it is evident that the amount of recovery sought by plaintiff exceeds $75,000.

## II.     THE REMOVING DEFENDANTS HAVE COMPLIED WITH ALL REMOVAL PROCEDURES.

44.     Defendants Johnson & Johnson, Johnson & Johnson Services, Inc., DePuy and DePuy Synthes Sales, Inc. were each served with plaintiff's Amended Complaint on April 7, 2021.  Accordingly, this Notice of Removal is timely filed pursuant to 28 U.S.C. § 1446(b).

45.     The Eighth Judicial District Court of Montana, Cascade County is located within the District of Montana.  *See* 28 U.S.C. § 1441(a).  Therefore, venue for this action is proper in this Court because the District of Montana is the "district and division embracing the place where such action is pending."  *See id.*

46.     None of the removing defendants is a citizen of the State of Montana, the State where this action was brought.  *See* 28 U.S.C. § 1441(b).

47.     While removal based on traditional diversity jurisdiction generally requires consent of all defendants, it is well settled that only properly joined defendants need consent to removal.  *See Romano v. Am. States Ins. Co.*, 295 F. Supp. 3d 307, 318 (W.D.N.Y. 2017).  Here, plaintiff's claims against KB Orthopedics are fraudulently joined with her claims against the removing

24

defendants.  Therefore, KB Orthopedics need not consent to removal.  Buhr

consents to removal of this action to this Court.

48.     No previous application has been made for the relief requested herein.

49.     Pursuant to 28 U.S.C. § 1446(a), copies of all pleadings and orders on

file with the Eighth Judicial District Court of Montana, Cascade County other than

Exhs. 1 and 2, are attached hereto as Ex. 4.

WHEREFORE, the removing defendants give notice that the matter bearing

No. ADV-21-0157 in the Eighth Judicial District Court of Montana, Cascade

County, is hereby removed to the United States District Court for the District of

Montana, and requests that this Court retain jurisdiction for all further proceedings

in this matter.

Dated: May 6, 2021.

DAVIS, HATLEY, HAFFEMAN & TIGHE, P.C.


By /s/ *Maxon R. Davis*

Maxon R. Davis
P.O. Box 2103
Great Falls, Montana 59403-2103
*Attorneys for Defendants Medical Devices*
*Business Services, Inc., Depuy Synthes Sales, Inc.,*
*Johnson & Johnson Services, Inc., and Johnson &*
*Johnson*